UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff, | : |
| v. | : Civil No. 3:06cv1844 (MRK) |
| ONE PARCEL OF PROPERTY LOCATED AT 35 RUTH STREET, UNIT 30 BRISTOL, CONNECTICUT, WITH ALL APPURTENANCES AND IMPROVEMENTS THEREON, | : |
| Defendant. | : |
| [CLAIMANT: WESLEY MUSUMANO] | : |

## RULING AND ORDER

This is an *in rem* civil action seeking forfeiture of 35 Ruth Street, Unit 30, Bristol, Connecticut (the "Property") under 21 U.S.C. § 881(a)(7) because the Property was used to commit, or facilitate the commission of, a violation of the Controlled Substances Act, 21 U.S.C. §§ 801 *et seq*.[1] On April 22, 2008, after a two-day trial, the jury returned a verdict in favor of the United States finding that the Property was subject to forfeiture because the Government had proved by a preponderance of the evidence that there was substantial connection between the Property and a violation of federal narcotics laws punishable by more than one year's imprisonment. *See* Verdict

---

[1] 21 U.S.C. § 881(a)(7) provides as follows: "The following shall be subject to forfeiture to the United States and no property right shall exist in them: . . . All real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter punishable by more than one year's imprisonment . . . ."

Form [doc. # 56]. The jury also found that the Claimant, Wesley Musumano, failed to prove that upon learning of the illegal conduct giving rise to the forfeiture, he did all that reasonably could be expected under the circumstances to terminate such illegal activity. *See id.* Mr. Musumano moves the Court under § 983(g)(4) of the Civil Asset Forfeiture Reform Act ("CAFRA"), Pub.L. No. 106-85, 114 Stat. 202 (2000), codified at 18 U.S.C. § 983, to reduce or eliminate the forfeiture because it is excessive within the meaning of the Excessive Fines Clause of the Eighth Amendment to the U.S. Constitution. The Court disagrees and therefore will not reduce or eliminate the forfeiture.

## I.

As evidenced by their extensive Stipulation of Facts, *see* Joint Trial Exhibit 1 [doc. # 50], there is not much dispute between the parties regarding the relevant facts. Mr. Musumano acquired the Property in 1998 for $57,000. There is no evidence that drug proceeds were used to purchase the Property. The parties agree that the current appraised value of the Property is $124,500.

Between March 3, 2006 and April 11, 2006, law enforcement officers with the assistance of a confidential informant and an undercover officer made nine controlled purchases of narcotics from Mr. Musumano, or his girlfriend, Diane Weidman, in which the Property was used to facilitate the transactions. Typically, Mr. Musumano or Ms. Weidman would receive a call at the Property from the agent or the informant seeking drugs. Either Mr. Musumano or Ms. Weidman would then leave the Property, where they were under surveillance, go directly to a local fast-food restaurant, deliver the drugs and then return immediately to the Property with the proceeds from the sale. The drugs involved included heroin and OxyContin. On one occasion, the agent followed Ms. Weidman back to the Property. Ms. Weidman then entered the home to speak with Mr. Musumano and when she returned to the street, she gave the agent ten bags of heroin in return for pre-recorded law

enforcement funds.

On April 18, 2006, law enforcement officers executed a search warrant at the Property, where they found forty-five bags of heroin, forty-one eighty milligram tablets of OxyContin, thirty-five thirty milligram tablets of OxyContin, forty-five and three-fourths 40 milligram tablets of methadone, twenty-four computer-generated prescription blanks, a blank prescription size note pad, fourteen empty bottles of various narcotics, a Tangent digital scale, and a ledger with drug transaction records. At trial, Ms. Weidman testified that she began dating Mr. Musumano in late 2004 and that prior to moving into the Property she observed Mr. Musumano conducting drug transactions from the Property a couple of times each week. After moving into the Property in September 2005, Ms. Weidman testified that she and/or Mr. Musumano conducted drug transactions from the Property a couple of times per day. This testimony was confirmed by a resident of the condominium complex who testified that the Property was used for numerous drug transactions. Ms. Weidman also testified that the narcotics sold to the undercover agent were stored at the Property. In addition, she testified that drug proceeds were stored at the Property and that the $7,000 found in the Property at the time of the search were drug proceeds.

As Mr. Musumano stated in his brief, "There is no issue as to the culpability of the Claimant." Claimant's Post-Trial Memorandum, Re Excessive Fines Clause of the Eighth Amendment ("Claimant's Post-Hr'g Mem.") [doc. # 65] at 3. He pleaded guilty in state court under the Alford Doctrine to one count of conspiracy to sell narcotics and two counts of sale of narcotics. *See id.* Those charges carried statutory punishments of five to twenty years' imprisonment with a five-year mandatory minimum. *See* Conn. Gen. Stat. §§ 21a-278 (b), 53a-48 (2006). At trial, Mr. Musumano admitted his drug trafficking and described a tumultuous childhood in which he was

raised by drug-addicted parents and drugs were in ample supply in the household. He also testified that he had successfully completed drug programs in prison and was no longer addicted to drugs. Mr. Musumano's state probation officer also verified Mr. Musumano's efforts to turn his life around and reunite with his son.

## II.

There is also no dispute regarding the standard this Court must apply in determining whether forfeiture of the Property would be constitutionally excessive. According to the Supreme Court in *United States v. Bajakajian*, 524 U.S. 321, 334 (1998), "[t]he touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." Specifically, "a punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense." *Id.*[2] Mr. Musumano has the burden of establishing that the forfeiture is grossly disproportional by a preponderance of the evidence. *See* 18 U.S.C. § 983(g)(3). In making that determination, the Court should consider the following:

> (a) "the essence of the crime" of the respondent and its relation to other criminal activity, (b) whether the respondent fit into the class of persons for whom the statute was principally designed, (c) the maximum sentence and fine that could have been imposed, and (d) the nature of the harm caused by the respondent's conduct.

*Collado*, 348 F.3d at 328 (citing *Bajakajian*, 523 U.S. at 337-39); *accord von Hofe v. United States*,

---

[2] Although *Bajakajian* was an *in personam* criminal forfeiture case, the Second Circuit has applied its reasoning to *in rem* forfeiture under 21 U.S.C. § 881(a)(7). *See United States v. Collado*, 348 F.3d 323, 328 (2d Cir. 2003). Two years after *Bajakajian*, Congress codified the "gross disproportionality" standard for *in rem* forfeitures when it enacted CAFRA. *See* § 983(g)(4) ("If the court finds that the forfeiture is grossly disproportional to the offense it shall reduce or eliminate the forfeiture as necessary to avoid a violation of the Excessive Fines Clause of the Eighth Amendment of the Constitution.").

4

492 F.3d 175, 186 (2d Cir. 2007) ("Determining the excessiveness of a civil *in rem* forfeiture is necessarily fact-intensive . . . .").

Considering the gravity of the offense, the culpability of Mr. Musumano's conduct, the nexus between the Property and the offense and the punishments available, the Court concludes that forfeiture of Mr. Musumano's entire interest in the Property does not violate the Excessive Fines Clause of the Eighth Amendment.

**III.**

The conduct of Mr. Musumano and the offenses he committed from the Property are serious and precisely the types of offenses that Congress had in mind when it enacted the *in rem* civil forfeiture provision. *See United States v. Austin*, 509 U.S. 602, 620 (1993) (noting legislative history providing that forfeiture was designed to be "a powerful deterrent" because "the traditional criminal sanctions of fine and imprisonment are inadequate to deter or punish the enormously profitable trade in dangerous drugs"). Mr. Musumano and Ms. Weidman had been conducting numerous weekly sales of narcotics from the Property for some time, a fact that Mr. Musumano does not deny. While Mr. Musumano was addicted to drugs himself, he was in business to do more than merely support his drug habit; he was out to make money to support his lifestyle (one that did not include legal employment since 2002). Ms. Weidman testified that she and Mr. Musumano were making $2,000 to $5,000 per week selling illegal drugs. Thus, Mr. Musumano was not a peripheral player in someone else's drug transaction. *See von Hofe*, 492 F.3d at 190-91.

The gravity of the harm caused by Mr. Musumano's sales of heroin and OxyContin is also readily apparent. Moreover, while Mr. Musumano asserts that the Property's relationship with the crime was tangential, the Court disagrees. Even Mr. Musumano's own brief states that the Property

"was used in some part to facilitate each one of [the nine] controlled purchases." Claimant's Post-Hr'g Mem. [doc. # 65] at 2. Mr. Musumano used the Property to facilitate and hide his drug transactions; the Property was used to store drugs and drug proceeds and to receive drug orders. In sum, the Property played a central role in Mr. Musumano's drug trafficking activities.

Given the gravity of Mr. Musumano's conduct, the penalties available are substantial. "The range of possible punishments aid [the Court's] analysis of the forfeiture's proportionality and the seriousness of the offenses [committed by Mr. Musumano]." *von Hofe*, 492 F.3d at 187. Had he been charged with federal crimes, Mr. Musumano would have faced a statutory maximum penalty of twenty years' imprisonment and a fine of $1 million. *See* 21 U.S.C. § 841(b)(1)(C) (2000). Under the U.S. Sentencing Guidelines, Mr. Musumano would have faced a recommended sentence of 41-51 months' imprisonment (before any adjustments or departures) and a fine of $1 million.[3] The State of Connecticut also provides substantial punishment for such conduct, since the offense that Mr. Musumano was charged with carried a mandatory minimum imprisonment of five years and a maximum imprisonment of twenty years. *See* Conn. Gen. Stat. §§ 21a-278(b), 53a-48 (2006).

It is true, as Mr. Musumano argues, that forfeiture will extinguish his interest in the Property and leave him without a home to return to once he completes his state sentence. Forfeiture of one's home is admittedly a "harsh" remedy. But as the Second Circuit explained recently in another case:

> Although forfeiture will extinguish Harold von Hofe's equity in 32 Medley Lane, the temporal and spatial extent of his criminal activity make clear that his own actions eviscerated any sanctity he might claim in his home. He made the conscious and deliberate decision to grow marijuana in his basement for approximately one year, an operation cut short only because the Branford Police and the DEA intervened.

---

[3] This calculation assumes that Mr. Musumano's relevant conduct converted to approximately 60 kilograms of marijuana, giving him a base offense level of 22. *See* U.S. Sentencing Guidelines Manual §§ 2D1.1(c)(9), 5E1.2(c)(4) (2007).

> This was neither a spur of the moment decision nor a momentary lapse of judgment. . . . If two cocaine sales in the amount of $250 warrants forfeiture of one's residence, *see 38 Whaler's Cove*, 954 F.2d [29, 32 (2d Cir. 1992)], so too must the year-long cultivation of sixty-five marijuana plants in the basement of a home.

*von Hofe*, 492 F.3d at 188. Unlike *von Hofe*, which involved only modest bartering of marijuana, this case, by contrast, involves substantial sales of heroin and OxyContin over a long period of time.

One could rightly question the wisdom of the Government's decision to render Mr. Musumano homeless at the precise time in his life when he appears to be on the road to rehabilitation and recovery. Depriving Mr. Musumano of a home for himself and his son cannot possibly aid in his substantial and commendable efforts to turn his life around and to become a law-abiding member of society. It also cannot help his efforts to reintegrate into his community. But whether it is wise or sensible in these circumstances to deprive Mr. Musumano of a home is a decision that the United States Attorney must make. The only question for this Court is whether, having made the decision to seek Mr. Musumano's home, the Government has sought to impose a punishment that violates the U.S. Constitution. Given the facts and circumstances of this case, the Court has no doubt that forfeiture is not grossly disproportional within the meaning of CAFRA and governing legal precedent. Accordingly, requiring Mr. Musumano to forfeit his entire interest in the Property does not violate the Excessive Fines Clause of the Eighth Amendment.

## IV.

The Government should submit a proposed form of judgment of forfeiture no later than **September 2, 2008.** Upon entry of the judgment, the Clerk is directed to close this case.

IT IS SO ORDERED,


/s/     Mark R. Kravitz
United States District Judge


Dated at New Haven, Connecticut: **August 25, 2008**